# CHARLESTON.

GEO. P. MYERS *et al. v.* A. T. NICHOLS
(C. C. 302.)

Submitted January 14, 1925.   Decided January 20, 1925.

OFFICERS—*Charges for Removal of Public Officer Should Give Defendant Notice of What He is Required to Answer.*

> While charges for the removal of a public officer need not be set out in the strict form of an indictment, they should be sufficiently explicit to give the defendant notice of what he is required to answer.
>
> (Officers, 29 Cyc. p. 1407 [1926 Anno].)
>
> (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Question certified from Circuit Court, Tyler County.

Proceedings by George P. Myers and others to remove A. T. Nichols from the office of Commissioner of the County Court of Tyler County. After overruling motion to quash petition, and sustaining motions to quash certain separate charges, the trial court certified its rulings.

*Ruling affirmed.*

*Law & McCue,* for plaintiffs.
*Willis & Ball,* for defendant.

MILLER, JUDGE:

This proceeding was instituted by petition to the circuit court of Tyler County, praying for the removal of defendant Nichols from the office of commissioner of the county court, on the ground of official misconduct, incompetency, and gross neglect of duty. The petition, consisting of about twenty-two typewritten pages, sets out numerous charges of alleged irregular acts committed by the defendant during the first three years of his term of office. The petition contains thirty-six paragraphs, some of which appear to cover two or more separate and distinct charges. For the purpose of motions to quash the petition and the various charges contained therein, the defendant has attempted to separate, as he conceives them to be, the twenty-four charges set out by petitioners. The lower court overruled the motion to quash the petition as a whole,

but sustained motions to quash certain of the separate charges as singled out by the motions to quash; and, on its own motion, the court has certified to this court the question of the correctness of its rulings thereon.

The second charge, to which the lower court overruled the motion to quash, alleges that, during the term of office of the defendant Nichols, the firm of Waters and Nichols, of which the defendant is a member, "sold to the County Court of Tyler County merchandise and supplies alleged to have been used by the poor farm of said county, and otherwise, and collected out of the funds of Tyler County," certain sums, listed in the petition, amounting to $176.89; and that Nichols, as a member of the county court, "voted for the allowance of all the claims alleged to have been due from the county court of Tyler County to the firm of Waters and Nichols and by his vote made it possible for said sums to be paid."

This charge is evidently based on the provisions of section 8*b*, chapter 39, and section 16*a*, chapter 151, Barnes' Code 1923. The former provides that, "it shall be unlawful for any member of the county court, or other tribunal established in lieu thereof, to be directly or indirectly interested in any contract for furnishing supplies for the poor, or in any contract, for any purpose whatever, in which the county court shall be in any way interested." Section 16*a*, chapter 151, provides: "It shall be unlawful for any member of a county court * * * to be or become directly or indirectly, pecuniarily interested in the proceeds of any contract or service, or in furnishing any supplies in the contract for, or the award or letting of which, as such member or officer, he may have any voice or control." This section makes the violation of the provision quoted a misdemeanor, and imposes a fine on the officer found guilty of the offense created, and further provides that he shall forfeit, for the benefit of the school fund, "the amount of said pecuniary interest, to be ascertained by the jury trying the case."

The petition does not allege that the merchandise and supplies sold to the county court by the firm of Waters and Nichols were furnished under contract, or that the said firm

had any contract with the county; nor does it say by whom the supplies were purchased, or by whom sold; and it is not charged that Nichols had any knowledge of the purchases until the bills were presented to the county court for payment. It is only alleged that Nichols voted to pay the bills. Does this amount to official misconduct, for which an officer elected under the constitution may be removed from office, as provided by section 5, article 4, of the constitution? If the supplies furnished the county court by the firm of Waters and Nichols were in fact used by the institution or institutions for which they were purchased, the county court was obligated to pay for them. *Goshorn's Ex'rs* v. *County Court,* 42 W. Va. 735. It is not charged that the transactions were illegal, only that Nichols committed an illegal act in voting to issue an order to pay for the supplies. While charges for the removal of a public officer are not required to be set out in the strict form of an indictment, they should be sufficiently explicit to give the defendant notice of what he is required to answer. *Moore* v. *Strickling,* 46 W. Va. 515. We do not think the charges here made against defendant Nichols can be construed to connect him with any contract, or with knowledge of the purchase of the supplies in question, there being no allegation other than that he voted to allow an order for payment of the bills.

The first charge in the petition alleges that the county court purchased certain supplies for the use of the poor farm, during the years 1921 and 1922, from the Middlebourne Feed Company, of which Ben Hardman, a member of the county court at the time, was a partner, and that defendant Nichols voted to issue orders for the payment of the bills rendered by the feed company; but it is not alleged that he participated in the purchase of these supplies, or that they were purchased with his knowledge. What we have said in connection with the second charge applies to this first charge.

The fifth charge alleges that the county court employed one Eli Spencer as district road superintendent of McElroy District; that Spencer is a relative of defendant Nichols; and that pursuant to an arrangement between Nichols and Spencer,

the latter employed the sons of Nichols to work on the roads of McElroy District. Section 115, chapter 43, Barnes' Code 1923, makes it "unlawful for any county court or any county engineer or supervisor to appoint or employ, as a laborer on the county roads, the father, son, son-in-law, grandson, brother, brother-in-law, nephew or first cousin by blood of any member of such court or of such engineer or supervisor; *provided,* a sufficient amount of other efficient labor can be secured within the vicinity." This section also provides that any person violating the same shall be guilty of a misdemeanor, and shall be fined not less than ten dollars nor more than one hundred dollars.

It does not appear what blood relationship exists between defendant Nichols and Eli Spencer; and we find no provision prohibiting the employment of relatives of the commissioners of the county court by district road superintendents. The statute prohibits only the employment of persons of the relationship named, by the county court or the county engineer or supervisor.

We have carefully examined the other charges contained in the petition, some of which are so indefinite and general that it is impossible to determine upon what particular acts of defendant petitioners rely as grounds to convict him of misconduct in office. No appearance in this court was made by petitioners, and they have filed no brief. Petitioners attack the discretion of the commissioners in the methods pursued by them in carrying on the business of the county; but it is not shown that the expenditures made by them were for unlawful purposes, or that the county did not receive full value or services for each bill ordered to be paid. While the petition may show irregularities in the methods pursued by the county court, we do not think the charges made against commissioner Nichols are alleged in the petition with sufficient particularity; and we are of opinion that the motion to quash should have been sustained.

Since the preparation of this opinion, the clerk of the court has received from counsel for petitioners a short note citing authorities in support of their contention. We have examined

all the authorities cited, but see no reason for departing from our conclusion as expressed in the foregoing opinion.

*Ruling affirmed.*