1. Section 8 of the act of the General Assembly approved August 15, 1914 (Ga. L. 1914, p. 232), providing for removal of commissioners of roads and revenues of Ben Hill County, by the judge of the superior court or the ordinary, after investigation of charges preferred by twenty-five qualified voters, or by the judge of the superior court after such investigation where charges are made by the grand jury, does not violate the due-process clause of either the State or the Federal constitution for lack of requirement as to notice and hearing, in view of the provision that the judge of the superior court or the ordinary to whom the complaint is presented shall cause to be made an investigation of such charges, "at which investigation the accused shall have the benefit of counsel, if desired," since the provision quoted implies such requirement as to notice and hearing.
(a) A statute complies with constitutional provisions as to due process where it provides for notice and hearing as a matter of right, either in express terms, or, as in this instance, by necessary implication. Kennard v. State of Louisiana, 92 U.S. 480
(23 L. ed. 478); Tatlow v. Bacon. 101 Kan. 26 (4,5) (165 P. 835, 14 A.L.R. 269).
(b) All presumptions being in favor of the constitutionality of an act of the legislature, it can not be lawfully set aside by the courts unless the alleged conflict with the constitution is plain and palpable. Mayes v. Daniel, 186 Ga. 345
(198 S.E. 535).
(c) The present statute necessarily implies that a commissioner shall be given notice and hearing before judgment, otherwise the court could not comply with the requirement as to affording benefit of counsel, if desired. This ruling is not in conflict with the decision in State Board of Medical Examiners v. Lewis, 149 Ga. 716 (102 S.E. 24), or with other decisions relied on by the respondents.
(d) On the law, the present case differs from the case of Walton v. Davis, 188 Ga. 56 (2 S.E.2d 603), where the applicable statute (Ga. L. 1927, p. 654) did not contain any language such as that "the accused shall have the benefit of counsel, if desired."
2. Section 8 of the act of 1914, supra, relating to the board of county commissioners of Ben Hill County, provides that "said county commissioners *Page 638 
shall not purchase directly or indirectly materials, live stock, supplies or other articles for any department of the county, from himself or from any copartnership in which he may be interested either directly or indirectly, nor from any person directly or indirectly in his employ in any capacity whatsoever;" and further provides in effect that if on prescribed investigation any commissioner shall be found guilty of having violated the foregoing provisions of this section he shall be removed from office by written order of the judge or ordinary trying such charges. Held, that this section of the act is not unconstitutional on the ground that it is a special law enacted in a case for which provision has been made by an existing general law, to wit, Code, §§ 23-1713, 23-1714, relating to purchases in behalf of counties by county commissioners and removal for violation of the inhibition therein declared. County of Pulaski v. Thompson, 83 Ga. 270 (4) (9 S.E. 1065).; Sayer v. Brown, 119 Ga. 539 (4) (46 S.E. 649); Smith v. Duggan, 153 Ga. 463 (112 S.E. 458); Rhodes v. Jernigan, 155 Ga. 523 (2) (117 S.E. 432); Bradford v. Hammond, 179 Ga. 40 (175 S.E. 18).
(a) Under the following constitutional provisions, as heretofore construed by this court, the above-stated sections of the Code so far as they refer to county commissioners are subject to qualification by special acts, and the special acts need not be uniform: Code, §§ 2-4601, 2-8401. See, in this connection, Moore v. Whaley, 189 Ga., post, 647.
(b) The request of counsel that the decision in Bradford v. Hammond, 179 Ga. 40, supra, be reviewed or overruled is denied.
3. The act of 1914, supra, is not invalid as failing to specify with sufficient distinctness the kind or character of the contemplated investigation, or before what court the same shall be made, or because it fails to provide for a plaintiff in whose name such proceedings shall be had. Code, §§ 2-3201, 2-3203, 2-3402, 3-105, 24-1901, 24-2615. See, in this connection, Lancaster v. Hill, 136 Ga. 405
(71 S.E. 731, Ann. Cas. 1912C, 272); Wallace v. State, 160 Ga. 570
(128 S.E. 759); Wallace v. State, 34 Ga. App. 281
(129 S.E. 299); Adamson v. Leathers, 60 Ga. App. 382
(3 S.E.2d 871).
4. The charges preferred by the grand jury in the instant case were not subject to special demurrer for failure to give more information than was given regarding the mercantile company from which purchases were made by the commissioners in behalf of the county; and if they were subject to special demurrer for failure to disclose what was meant by the words "W. Smith," "Morris," and "Richie," as contained in an account attached thereto, the overruling of such demurrer appears to have been harmless to the respondents, the agreed statement showing that the respondents knew that these words signified the names of employees of the county by whom the purchases were made. Kytle v. Kytle, 180 Ga. 833 (3) (181 S.E. 81); Harris v. Neuman, 183 Ga. 398 (3) (188 S.E. 689).
5. The provisions of the law as quoted in note 2 above merely prohibit purchases by a county commissioner from himself, or from any copartnership in which he may be interested either directly or indirectly, or from any person directly or indirectly in his employ in any capacity whatsoever. They do not prevent one commissioner from making purchases *Page 639 
from another, or from purchasing from a copartnership in which another commissioner may be interested, or from a person in the employ of another commissioner in any capacity. The statute, being quasi criminal in nature, is subject to the rule of strict construction. The prohibited acts, however, are not denounced as criminal offenses, but are specified only as grounds for removal, and consequently the principles of the criminal law as to conspiracy and principals and accessories do not apply. See, in this connection, Cobb v. Smith, 102 Ga. 585 (27 S.E. 763); Schane v. Atlanta, 127 Ga. 36
(56 S.E. 91); Myers v. Nichols, 98 W. Va. 37
(126 S.E. 351); State of Iowa ex rel. Fletcher v. Naumann, 213 Iowa, 418 (239 N.W. 93, 81 A.L.R. 483).
6. On application of the foregoing rulings, the court did not err in overruling the demurrer filed by Commissioner Robitzsch upon any ground therein taken, but did err in overruling grounds 1, 1(a), and 7 of the demurrer filed by Commissioners Horton and Stokes, and as related to the two last-named respondents the further proceedings were nugatory.
7. The order of the judge is properly construed as a finding that the charges preferred in the presentments by the grand jury were true, and as related to Commissioner Robitzsch this finding was authorized by the evidence. On making this finding, the trial judge had no discretion except to pass an order removing such commissioner, the statute in this respect being different from that relating to clerks of the superior court, who under the Code, § 24-2724, are merely subject to removal for stated causes. Compare Wallace v. State, 160 Ga. 570, supra.
Judgment affirmed as to Commissioner Robitzsch; reversed as to Commissioners Horton and Stokes. All the Justices concur.
 No. 13006. FEBRUARY 15, 1940.
The writ of error brings into question an order of the superior court of Ben Hill County removing Martin D. Robitzsch, J. Rufus Horton, and J. C. Stokes, as commissioners of roads and revenues, after investigation of charges preferred by the grand jury in pursuance of an act creating the board of commissioners of that county.
By an act approved August 15, 1914, the General Assembly created the offices of commissioners of roads and revenues in and for Ben Hill County. Ga. L. 1914, p. 232. Section 8 provided as follows: "Be it further enacted by the authority aforesaid, that said county commissioners shall not purchase directly or indirectly materials, live stock, supplies or other articles for any department of the county, from himself or from any copartnership in which he may be interested either directly or indirectly, nor from any person directly or indirectly in his employ in any capacity whatsoever." The same section further provided that whenever twenty-five *Page 640 
qualified voters of the county should make written complaint, on information and belief, to the judge of the superior court or to the ordinary, that any of the commissioners have violated any of the foregoing provisions, the judge or the ordinary to whom the complaint is presented shall cause to be made before him "an investigation of said charges, at which investigation the accused shall have the benefit of counsel, if desired, and if said judge or ordinary shall find the said commissioner guilty of the violation or violations charged, the said commissioner shall within three days be removed from office by a written order of the said judge or said ordinary trying the charges, which order shall be recorded on the minutes of the board of commissioners, and the said ordinary of the county of Ben Hill shall appoint a successor to said commissioner." The section further provides that each grand jury shall make or cause to be made special investigation to ascertain whether any commissioner or commissioners have been guilty of violating any of such provisions, and that the general presentments of the grand jury shall embody a report that such special investigation has been made, and state specifically the results thereof. If it appears therefrom that any county commissioner or commissioners have been guilty of such violation or violations, the particulars shall be stated, and "thereupon the court shall proceed to cause to be made before it an investigation . . just as if the complaint therein specified had been made to it, and with the same duty, authority, jurisdiction and power of summary removal."
It is thus seen that the act provides two methods of bringing before the court for investigation charges that commissioners have violated the provisions as to purchases in behalf of the county: (1) by complaint filed by twenty-five qualified voters of the county, and (2) by presentments of the grand jury. The present case arose by the second method.
In the general presentments for the April term. 1939, the grand jury made the following statement regarding conduct of the county commissioners: "We have investigated the books and records and acts and doings of the commissioners of roads and revenues of this county, and we have made a special investigation with a view of ascertaining whether or not any commissioner or commissioners have been guilty of violating any of the provisions of the first paragraph of section 8 of the act of the General Assembly of Georgia, *Page 641 
approved August 15, 1914, as contained in the Georgia laws of 1914, pages 232-239, entitled `Ben Hill County Commissioners Created,' and the result of our special investigation show and reveal that Martin D. Robitzsch, J. Rufus Horton and J. C. Stokes, the three commissioners of this county as aforesaid, have each been guilty of violating said section of said act in the following particulars, to wit:
"(a) The particulars of such violation on the part of the said Martin D. Robitzsch are as follows, to wit:
"1. That the said Martin D. Robitzsch was authorized by our county commissioners to purchase for the use of our county seven thousand feet of No. 2 flooring at the lowest and best price obtainable, and that in pursuance of said authority on January 3, 1939, he did purchase said lumber from the A. T. Fuller Lumber Company at $20 per thousand feet or for a total consideration of $140, and that the said Martin D. Robitzsch on the 5th day of January, 1939, did sell said lumber to our county for $25 per thousand feet or a total price of $175 and did render a bill to our county in said sum of $175, representing the sale by him to our county of said lumber, which said bill was approved for payment by all of our commissioners and which was paid by county warrant No. 7706.
"2. That the said Martin D. Robitzsch, as commissioner of our county and acting in his official capacity as such, has frequently and on numerous occasions purchased from himself and from Robitzsch Mercantile Company, which is either a trade-name under which he operates a business in the City of Fitzgerald, Ben Hill County, Georgia, or is a copartnership in which he is interested directly or indirectly, the exact status and ownership of the said Robitzsch Mercantile Company being unknown to your grand jurors, materials, supplies and other articles for the various departments of our county and has submitted bills to said county covering said purchases and sales and has, while acting as commissioner, approved the payment of said bills and authorized warrants to be issued covering the payment thereof, a copy of said purchases made by himself as commissioner from himself individually and from the Robitzsch Mercantile Company as aforesaid, showing the dates of said purchases and sales, the articles so purchased and bought and the prices paid for same being hereto attached, marked exhibit `A' and made a part hereof as fully as if incorporated herein." (Exhibit *Page 642 
"A" consisted of a minutely itemized statement of account for the month of January, some items of which were as follows: "Jan. 2, 6 light bulbs, .75; W. Smith 1.20; Jan. 2, 1 keg 20p. case Morris 4.50; Jan. 14, 1 1pr. digger handles Richie .40.")
"(b) The particulars of such violation on the part of the said J. Rufus Horton and J. C. Stokes being as follows, to wit:
"(1) That the said J. Rufus Horton and J. C. Stokes, while acting in their official capacity as commissioners of this county, did aid, abet, permit and conspire with Martin D. Robitzsch, as the other commissioner of our county, whereby the said Martin D. Robitzsch as commissioner was permitted to purchase from himself and from the Robitzsch Mercantile Company, which is either a trade-name under which Martin D. Robitzsch operates or is a copartnership in which he is interested, the exact status and ownership of which is unknown to your grand jurors, materials, supplies and other articles for the various departments of our county, and while acting as commissioners have approved payment of the bills submitted by the said Martin D. Robitzsch and Robitzsch Mercantile Company covering said purchases and sales and have authorized warrants to be issued covering the payment thereof, a copy of said purchases made by the said Martin D. Robitzsch from the said Robitzsch Mercantile Company as aforesaid and which were approved by all of said commissioners being hereto attached marked exhibit `A' and made a part hereof as fully as if incorporated herein, and that as a part of said conspiracy as aforesaid did audit and approve for payment said bill hereto attached and which is for the principal sum of $359.22 and did authorize the issuance of warrant No. 7706 to the said Robitzsch Mercantile Company covering the payment of said bill.
"We therefore ask this honorable court to cause to be made before it an investigation as is contemplated by said section 8 of the Georgia Laws of 1914, pages 232-239. Approved this 20th day of April, 1939.
J. C. Holder, foreman
J. Jarratt Pryor, clerk."
On May 23, 1939, on consideration of the foregoing report, the judge of the superior court passed an order requiring the commissioners to show cause before him at the court-house on June 3, 1939, "as to whether the above-named charges are true, and if *Page 643 
true, why they and each of them should not be removed from office as provided by the hereinabove acts." The order further stated that the commissioners and each of them should have the right and privilege of employing counsel to represent them at the hearing, and of requiring the attendance of witnesses. The court at the same time directed that the solicitor-general of the circuit conduct the hearing in behalf of the grand jury, to the end that all facts might be brought before the court by the investigation. It was further ordered "that this proceeding be filed with the clerk of the superior court," and docketed upon the motion docket, and that the clerk issue subpoenas for all witnesses who may be desired by the commissioners or any of them; that a copy of the entire proceedings, including the rule nisi, be served by the sheriff upon each of the commissioners, and also upon the clerk and foreman of the grand jury, and the solicitor-general. On June 3, 1939, the date assigned for the hearing, the judge passed an order naming the State as party plaintiff, and directing that the matter should proceed in the name of the State of Georgia as plaintiff.
J. Rufus Horton and J. C. Stokes, commissioners, filed a joint demurrer "to said proceedings," and Martin D. Robitzsch filed a separate demurrer. The demurrer of Horton and Stokes was in substance as follows: (1) the charges contained in the grand jury presentments, even if true, do not state any ground for removal of these demurrants or either of them; (a) none of the alleged acts of these respondents as contained in said presentments is a ground of removal under section 8 of the act of the legislature contained in Georgia Laws 1914, page 232 et seq.; (b) it is not shown in said presentments what is meant by the words "W. Smith," "Morris," "Richey," as set out and contained in said account attached to said presentments; (2) section 8 of the act approved August 15, 1914, as set forth in such grand jury presentments, is unconstitutional and void for the reason that it fails to provide for any notice and hearing of charges, and provides for removal of respondents from office without requiring notice and hearing in contemplation of the due-process clauses of the State and Federal constitutions; (3) section 8 of the act in question is further unconstitutional and void for the reason that it is repugnant to the provision of the constitution of this State that no special law shall be enacted in any case for which provision has been made by an existing *Page 644 
general law, there being at the time of the passage and approval of this act a general law, to wit: Code, §§ 23-1713 and 23-1714, of this State, providing for removal of county commissioners; (4) (this ground is substantially the same as ground 2); (5) the act is invalid because it is too vague, indefinite, and uncertain to have legal effect, because (a) it does not specify the kind or character of investigation to be made, (b) it does not state or describe the court that shall cause the investigation to be made before it, (c) it does not provide the kind, character or manner of investigation, nor how such investigation shall be made; (6) the act is void because it makes no provision for a prosecutor or a movant or a plaintiff, or for any person in whose name the proceedings shall be had; (7) the presentments of the grand jury set out in the rule nisi do not charge that these two defendants or either of them purchased directly or indirectly any supplies or articles for any department of the county from themselves or from any copartnership in which either of them was interested either directly or indirectly, or from any person directly or indirectly in the employ of these demurrants or either of them; (8) the proceedings do not show who constitute Robitzsch Mercantile Company, and the ownership of this company is not stated, nor is it definitely alleged whether or not Robitzsch Mercantile Company is a trade-name of an individual, or whether it is a partnership or a corporation, and no facts are alleged to show why these particulars are not set forth.
The demurrer filed by Robitzsch was the same in all respects except that it did not contain grounds 1 and 7 as set forth in the demurrer of the other respondents, and except of course that the numbers of the various grounds of demurrer were different because of such omissions.
All grounds of both demurrers were overruled, and the case proceeded to trial upon the following agreed statement: "It is agreed between the parties as follows, to wit: That Henry Bryant, an employee of Robitzsch Mercantile Company, and at the direction of Martin D. Robitzsch, went to Ocilla, Georgia, to A. T. Fuller Lumber Company, and bought from it 7000 feet of number 2 flooring on January 3, 1939, and that he paid therefor, for the Robitzsch Mercantile Company, the sum of $20 per thousand, said lumber to be delivered to the Ben Hill County convict camp by the said A. T. Fuller Lumber Company; that prior thereto, the other *Page 645 
two commissioners, J. C. Stokes and J. Rufus Horton, had instructed, directed and authorized Martin D. Robitzsch to buy said lumber for said county at the best obtainable price; that said lumber was delivered by the said A. T. Fuller Lumber Company to the convict camp in Ben Hill County, and that Ben Hill County used the same; that at the regular commissioners' meeting date, to wit: on the first Wednesday in February, 1939, the said Robitzsch Mercantile Company submitted its bill to the county commissioners, said bill being fully set out and itemized in the presentments of the grand jury under which this proceeding is had and as contained in the rule nisi in this case, which included the lumber so purchased at and for the price of $25 per thousand; that the other items shown on said bill were purchased from the Robitzsch Mercantile Company by J. W. Morris, Rewis, Smith, and Richards, who were the employees of the County of Ben Hill and who worked for them in the operation of the public-works camp of said county, and who purchased at the direction of the commissioners of said county. And at said meeting, to wit: February 1, 1939, said bill was approved for payment by all of the commissioners and a county warrant was issued therefor, being number 7706 and for the sum of $359.22, said warrant being issued to the Robitzsch Mercantile Company, which warrant was by the Robitzsch Mercantile Company endorsed and which was paid by The National Bank of Fitzgerald, which bank now owns said warrant; the said The National Bank of Fitzgerald is the county depository of Ben Hill County, Georgia, and that Ben Hill County has no county treasurer. It is further agreed that Martin D. Robitzsch, said commissioner, was part owner of the Robitzsch Mercantile Company and was such at all times herein mentioned, and that such fact was known to the other commissioners, and said Robitzsch Mercantile Company being a partnership composed of Martin D. Robitzsch and S. D. Furlow. That the voucher hereinbefore referred to was issued by the county commissioners and the bill approved by all the commissioners in open meeting; that said Robitzsch Mercantile Company operates a hardware store and builders' supply business in the City of Fitzgerald, Georgia. It is further agreed that upon investigation by the grand jury, that all three commissioners were called as witnesses and testified before the grand jury."
After considering this statement, the court passed an order containing *Page 646 
the following recitals and judgment: "The above and foregoing case coming on formally to be heard at this time upon regular assignment and agreement of all parties interested, the attorneys for the respondent and attorney for the State having agreed upon the following statement of facts, to wit: . . And the court having overruled the several grounds of demurrer heretofore urged and argued; it is therefore considered, ordered and adjudged by the court as follows: This court construes the recitals in the agreed statement of facts as establishing almost identically and in detail the recital of facts contained in the general presentments of the grand jury of this county at the April term of this court, wherein the accusation was made and charged against the above-named respondents, the county commissioners of said county. This court construes the act of 1914, section 8 thereof, as being mandatory; that is to say there is no discretion left to the judge of this court as to what decision he should make, but is a plain mandate of the act of the legislature referred to that he shall at this time pass this order of removal of the said county commissioners of said county. It is therefore ordered and adjudged that J. C. Stokes, J. Rufus Horton, and Martin D. Robitzsch be, and they are, hereby removed from their several offices as provided and specified in the act of the legislature creating the said board of commissioners, and as provided in section 8 of said act."
Whereupon the respondents sued out a joint writ of error complaining of the judgment upon all of the grounds set forth respectively in their demurrers, and upon the further ground that the judgment of removal was contrary to the evidence and without evidence to support it as to each of the respondents. A further exception presented the contention that the court erred in construing section 8 of the act of 1914, supra, as being mandatory, or as depriving the court of any discretion as to removal of respondents after investigation of the facts.