## SMITH et al. v. DUGGAN et al.

1. Section 9 of the act of the General Assembly of 1909 (Georgia Laws 1909, p. 483) is not in conflict with that portion of article 1, sec. 4, par. 1, of the constitution of Georgia (Civil Code, § 6391), which declares that "no special law shall be enacted in any case for which provision has been made by an existing general law."

2. Section 9 of the act of the General Assembly of 1909 (Georgia Laws 1909, p. 483) is not in conflict with article 6, sec. 18, par. 1, of the constitution of Georgia (Civil Code, § 6545), which declares that "the right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate."

3. Nor is it unconstitutional because it deprives defendants of the right of appeal.

No. 2906. MAY 17, 1922.

Removal from office. Before Judge Park. Wilkinson superior court. October 4, 1921.

Twenty-six freeholders petitioned the judge of the superior court of Wilkinson County to remove J. H. Duggan and E. O. Smith from the offices held by them as commissioners of roads and revenues for the county, and that the same be declared vacant. The causes for removal stated by the petition are, that Smith and Duggan, while acting as commissioners, purchased from J. H. Duggan a mule, passed a voucher for the purchase-price of the same in the name of Jim Taylor with knowledge that Taylor did not own the mule, and Duggan collected the voucher representing the purchase-price of the mule; that they purchased from Sam Duggan, a son of J. H. Duggan, a member of said board, thirty bushels of corn and other supplies furnished the county, and passed voucher for the same; that they employed one Farris to build a bridge upon the understanding that E. O. Smith, a commissioner, should superintend the work and receive pay from the county treasurer for such services; that said board had not, during the term of office of Duggan and Smith, published, as required by law, in the official newspaper of the county or by posting before the court-house door an itemized statement showing the amount of county funds on hand and the amount disbursed; that they had further violated the spirit and letter of the law by passing voucher for gas, oil, and repairs on a Ford car belonging to the superintendent, after having paid to the superintendent the full amount allowed by law, as recommended by the grand jury.

The petition was demurred to, upon the grounds: (1) that

section 9 of the act of the General Assembly of Georgia, approved August 6, 1909, upon which said petition is based, is unconstitutional and void, for that said act is in conflict with article 1, section 4, paragraph 1, of the constitution of Georgia, which provides that no special law shall be enacted in any case for which provision has been made by an existing general law, there being at the time of the approval of said act a general law, to wit, sec. 295 of the Penal Code of Georgia of 1910, providing for the removal and punishment of members of the board of commissioners of roads and revenue for malpractice in office; (2) that said act is unconstitutional and void, because it conflicts with art. 6, sec. 18, par. 1, of the constitution of Georgia, preserving the right of trial by jury, and because it also conflicts with art. 1, sec. 1, par. 4, of the constitution of Georgia, in that it deprives defendants of the right of appeal; (3) said act is unconstitutional and void, because it deprives defendants, without due process of law, of an office to which they were elected for a definite term; for that the act provides that the judge of the superior court may, upon the petition of twenty-five freeholders, remove defendants from office without notice, without a hearing, and without an opportunity to be heard. Grounds one and two of the demurrer were sustained. The petitioners below assign error here upon the judgment sustaining the two grounds of the demurrer stated, and dismissing the petition. Section 9 of the act of 1909 is as follows: " That said board shall keep, or cause to be kept, a record of all its acts and doings; that it shall publish in the official newspaper of said county, or by posting before the court-house door, a monthly statement, fully itemized, showing the exact amount of county funds on hand, and the amount disbursed, giving name of each party in whose favor each order was passed, and the amount thereof. Should said board fail or refuse to comply with this section for as many as two months, their office shall be declared vacant when twenty-five freeholders of said county present the facts to judge of superior court, and he finds that said facts are true."

*Sibley & Sibley,* for plaintiffs.

*Allen & Pottle,* for defendants.

GILBERT, J. 1. Section 9 of the act of 1909 (Ga. Laws 1909, p. 483) is not in conflict with article 1, sec. 4, par. 1, of the constitution of Georgia (Civil Code (1910), § 6391), and is therefore

not void. It is contended, that, construing Civil Code sections 393 and 394 together with Penal Code § 295, there is a general law providing for the removal of members of boards of commissioners of roads and revenue; and that the act of 1909, providing for the creation of a board of roads and revenues for Wilkinson County, and providing its duties, and for the removal of members of such board, is a special law providing for the same thing. It must be borne in mind that the constitution provides that the legislature has power to pass separate and distinct acts for any counties which require county commissioners, and does not require these acts to be uniform in operation. Article 6, section 19, par. 1, of the constitution (Civil Code of 1910, § 6548); *Sayer* v. *Brown,* 119 *Ga.* 545 (46 S. E. 649). In the case of *County of Pulaski* v. *Thompson,* 83 *Ga.* 270 (4), 273 (9 S. E. 1065), it was held that "the legislature has the power to pass separate and distinct acts for any counties which require county commissioners, and it is not necessary that these acts shall be uniform in their operation in all such counties." It is true that in the cases here cited nothing was said about the removal of commissioners, nor whether the legislature was authorized to provide different methods for the removal of county commissioners in different counties. We think, however, that the removal of county officers is a part of the general scheme of providing for the creation of such boards and for the powers to be exercised by them. If it was the constitutional scheme not to require uniformity in the creation of these boards nor in the powers to be exercised by them, it would naturally follow that uniformity would not be required in the matter of removals. Only a portion of section 295 of the Penal Code is applicable to county commissioners. On its face it purports to provide for the indictment and removal of county commissioners who are guilty of malpractice in office. There is no definition of what this term " malpractice in office " is meant to include. The term itself is capable of broad meaning, and necessarily it is quite indefinite. The section, omitting the parts inapplicable, provides as follows: " Any . . member of any board of commissioners . . who shall be charged with malpractice in office . . shall be punished as for a misdemeanor, and shall be removed from office." The next section, 296, provides that " an indictment under the preceding section shall specially set forth the merits of the complaint, and a copy thereof

shall be served on the defendant before it is laid before the grand jury. The prosecutor and the defendant, and their witnesses, shall have the right of appearing before and being heard by the grand jury." These two sections leave the question to which they refer in a peculiarly uncertain position. Section 295 does not provide that the offending officer shall be punished on conviction. It provides that any such officer who shall be " charged " with malpractice in office shall be punished, etc., and shall be removed from office. The next section merely provides what the indictment shall contain, and for its service on the defendant, and a right of the latter to appear and be heard by the grand jury. The matter of removal, under section 295, appears to follow as a necessary consequence of the punishment, and, unless the county officer is charged with malpractice in office and punished under that section, that the removal would not follow. We are led to the conclusion, for the reasons pointed out, that sections 295 and 296 do not constitute a general law providing for the removal of county commissioners in all cases, if in fact it is a valid legal provision in any case for the punishment and removal of the county commissioner. Sections 393 and 394 of the Civil Code provide for the removal of county commissioners for specified acts, which do not include all of the acts provided in section 9 of the act of the General Assembly of 1909. The provisions of the last-named act provide for the removal of county commissioners for acts which are not themselves made penal. The acts enumerated in section 9 of the act may be properly designated under the term of official misconduct, for which no criminal punishment is provided. We conclude that the court erred in sustaining the first paragraph of the demurrer, based on the ground that the act in question was in conflict with the constitutional provision found in the Civil Code (1910), § 6391.

2. The ninth section of the act in question is not in conflict with article 6, section 18, par. 1, of the constitution of Georgia (Civil Code (1910), § 6545), preserving the right of trial by jury. It is not a criminal proceeding. Violation of the provisions of the act is not punished as a crime. It is at most quasi criminal; but in our opinion it is a civil proceeding. The section of the constitution providing that the right of trial by jury shall remain inviolate has been frequently construed. In the case of *Lippitt* v.

*Albany,* 131 *Ga.* 629, 631 (63 S. E. 33), it was said: " The constitution declares that ' the right of trial by jury, except where it is otherwise provided in this constitution, shall remain inviolate.' But the preservation of the right ' inviolate ' did not operate to confer a right of trial by jury in all proceedings of whatsoever character, where no such right had ever existed." The case of *DeLamar* v. *Dollar,* 128 *Ga.* 57 (57 S. E. 85), was relied on to support a contrary contention. The court, in reference to the latter case, said: " Presiding Justice Cobb, who delivered the opinion, was careful to guard it against such misapplication. Thus he said (p. 61): The expression ' common-law cases,' or similar language, which has been heretofore used, or may be used in the further progress of this opinion, is intended to embrace only cases which were the subject of real, personal, or mixed actions, according to the practice of the English common-law courts, and not those proceedings which were not known to the common law, and are only authorized under our statutes, such as possessory warrants and the like." Numerous proceedings might be mentioned where a jury trial is not required under the constitution; such as, for instance, validation of municipal and county bonds, judgments rendered on bail-bonds, and the like. At all events, a proceeding to remove a county commissioner is not a criminal case nor a common-law civil case seeking a money judgment, nor is it a case falling in such a class. For these reasons we do not think the framers of the constitution intended the section referring to jury trials to include a proceeding like this. There is no merit in the contention that the act is unconstitutional because it deprives the defendant of appeal. In the first place, there is no section of the constitution which specifically provides for an appeal; and in the second place, it is a proceeding before the judge of the superior court, and a bill of exceptions lies to review any final judgment that he may pass, injurious to the rights of the defendants. For these reasons the judgment of the court sustaining paragraph two of the demurrer was erroneous.

3. The court sustained two paragraphs only of the general demurrer, which resulted in a dismissal of the petition. The rulings above announced cover all of the assignments of error, and a reversal of the judgment sustaining the demurrers and dismissing the petition results.

*Judgment reversed. All the Justices concur.*