33058, 33059. WILLIAMS v. RICHMOND COUNTY et al. (two cases).

BOWLES, Justice.

The Commissioners of Roads & Revenues of Richmond County, Georgia, individually as citizens and taxpayers of the county, and collectively in their official capacities, filed a complaint against Phillip Williams, individually and as alleged Coroner of Richmond County, and Iree W. Pope, individually and as Probate Judge of Richmond County, seeking relief by way of declaratory judgment, quo warranto, a writ of prohibition and general equitable relief.

---

The defendant-respondent, Iree W. Pope, as probate judge, on the 14th day of September, 1977, appointed defendant-respondent, Phillip Williams, Coroner of Richmond County, to fill the unexpired term of the former coroner, Jesse C. Redd, who resigned effective September 15, 1977.

The principal issue raises the question of who has the authority to fill a vacancy when one occurs in a county office in Richmond County.

Respondents contend that the Probate Judge of Richmond County, Georgia has this authority by virtue of the general law of this state, specifically Code Ann. §§ 21-101, 21-102, 23-1102 (a) (b).

The complainants contend that the Board of Commissioners of Roads & Revenues of Richmond County has this authority by virtue of a special Act of the General Assembly of Georgia, Ga. L. 1907, p. 324, as amended.

The trial court ruled in favor of complainants, removed Williams from office, and declared the attempted appointment by the probate judge void and without authority of law. Respondent Williams appeals to this court from that judgment, and although there may be some imperfection in his appeal, we think the case should be decided on its merits. We affirm.

Appellant contends the trial court erred in that the general law of this state under authority contained in Code Ann. § 23-1102 (b), as amended by Ga. L. 1969, p. 350, gives the probate judge of each county the authority to fill vacancies in the office of coroner. He urges that Art. I, Sec. II, Par. VII (Code Ann. § 2-207) of the Constitution of Georgia, 1976, controls, which Code section provides: "Laws of a general nature shall have uniform operation throughout the State, and no special laws shall be enacted in any case for which provision has been made by an existing general law. . ." Thus, the special law creating the Board of Commissioners of Richmond County, Georgia, and delegating to them the specific power and authority to fill vacancies in Richmond County offices is a special Act in conflict with the general law on that subject, and, therefore, must yield to the above cited constitutional provision.

The 1877 Georgia Constitution, Art. XI, Sec. III, Par. I provided: "County officers to be uniform. — Whatever tribunal, or officers, may hereafter be created by the General Assembly for the transaction of county matters, shall be uniform throughout the State, and the same name, jurisdiction and remedies, *except* that the General Assembly *may provide for the appointment of commissioners of roads and revenues in any county.*" That Constitution was later amended to provide in Art. VI, Sec. VI, Par. II, "Powers. The courts of ordinary shall have such powers, in relation to roads, bridges, ferries, public buildings, paupers, *county officers,* county funds, county taxes, and other county matters *as may be conferred on them by law.*" Also, Art. VI, Sec. XIX, Par. I provides, "Power to create county commissioners. The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, *and to define their duties.*" (Emphasis supplied.)

On this authority four Acts of the legislature were adopted which are pertinent to the decision in this case. Ga. L. 1880-1. p. 574, created the city court in the County of Richmond providing in part: "The judge of said city court shall be ex officio commissioner of roads and revenues for the County of Richmond, and as such shall discharge all of the duties formerly devolved upon the justices of the inferior court as to county business." Ga. L. 1882-3, p. 528, reaffirmed the judge of the city court in the County of Richmond ex officio commissioner of roads and revenues for the county saying that the previous Act was of doubtful validity. Among other things, it granted to the judge of that court the following specific authority: "In supplying by appointment, all vacancies in county offices and in ordering elections to fill them."

Ga. Laws 1907, p. 324, created a Board of Commissioners of Roads & Revenues for the County of Richmond and defined their powers and duties as follows: "§ 3. Be it enacted, that the said Board of Commissioners shall exercise all of the powers relative to county matters that were vested in the judge of the city court as ex officio commissioner of roads and revenues under and by virtue of an act 'to constitute the judge of the city court in the

County of Richmond ex officio commissioner of roads and revenues for Richmond County; to define his powers and duties and for other purposes." Ga. L. 1964, p. 2809 empowered the county commissioners the right to call special elections to fill vacancies.

Our State Constitution of 1976, Art. I, Sec. II, Par. VII (Code Ann. § 2-207) provides, similarly: "General laws; uniform operation; how varied. Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law. . ."

Article IX, Sec. I, Par. VI (Code Ann. § 2-5806) of the 1976 Constitution, also provides: "County government uniform; exceptions. Whatever tribunal, or officers, may be created by the General Assembly for the transaction of county matters, shall be uniform throughout the State, and of the same name, jurisdiction, and remedies, *except* that the General Assembly may provide for County Commissioners in any county, . . ." (Emphasis supplied.) Art. IX, Sec. I, Par. VII (Code Ann. § 2-5807) of the 1976 Constitution, provides: "Power to create county commissioners. The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them, *and to define their duties.*" (Emphasis supplied.)

Code Ann. § 21-101, provides that coroners are elected, commissioned, and qualified in the same manner as clerks of the superior courts. Code Ann. § 21-102 provides that the probate court shall appoint coroners on the same terms and in the same manner as they appoint county surveyors. Code Ann. § 23-1102 provides for the election of county surveyors, and the filling of vacancies by the probate judge (formerly the ordinary). These last three referred-to Code sections are laws of general application throughout the state.

Thus we have a special or local law authorizing the Commissioners of Roads & Revenues of Richmond County, Georgia, to fill the vacancies in the office of coroner in that county, which is in conflict with the method of appointment by general law prevailing throughout most of the state. The General Assembly has

the power to pass separate and distinct laws creating county commissioners; and provisions of general laws enacted by the legislature do not apply to such officers, unless made so by the special laws creating them. *Rhodes v. Jernigan,* 155 Ga. 523 (117 SE 432) (1923); *Bowen v. Lewis,* 201 Ga. 487 (40 SE2d 80) (1946). We must determine whether or not such authority violates the constitutional provision which provides for uniformity throughout the state, or whether it is permissible under the constitutional provisions which specifically authorize the legislature to provide for county commissioners and to define their duties. Some doubt exists as to how far the legislature may go in this respect. If such provisions have no limitation it would be possible to grant to county commissioners almost unbridled authority overriding general state law.

On the other hand, where the authority given is directly in keeping with orderly processes of government within the county, expedites the filling of vacancies in county offices, affects no one outside the county itself and historically[1] is in keeping with similar authority granted to predecessors performing similar functions, we say such authority is permissible under the provisions of the 1976 Constitution, Art. IX, Sec. I, Pars. V and VII, hereinabove set forth.

---

[1] Georgia's first Constitution adopted in 1777 created a superior court; provided for the continuance of "Courts of Conscience" "and granted to the House of Assembly (our legislature) the power to make such laws and regulations as may be conducive to the good order and well being of the state . . ." Our House of Assembly adopted inferior courts and these courts were in charge of county business. By legislative Act passed on February 22, 1850, and repassed December 5, 1861 the Sixth Section of the Third Article of our then existing Constitution was amended, and what we know today as the probate court (then court of ordinary) was first established. Even then the inferior courts retained, by statute, the authority to fill vacancies in county offices. The Constitution of 1868, Art. V, Sec. XIV(1) abolished the inferior courts and the duties of the justices thereof "are transferred to such

The same question was before this court in *Robert v. Steed,* 207 Ga. 41 (60 SE2d 134) (1950), where it was unanimously held that the Commissioners of Roads & Revenues of Fulton County, created by an Act of the General Assembly, were empowered to exercise all of the powers that could lawfully be exercised by the inferior court when sitting for county purposes, or by the justices thereof, at the time of the abolishment of the inferior courts, except in cases of lunacy. The inferior courts of this state, by the Constitution of 1868, had the power and authority to fill vacancies in county offices and the special Act conferred upon the commissioners of Fulton County the power and authority to fill vacancies in county offices in that county. In the decision, this court compared four similar provisions of our 1945 Constitution, Article I, Sec. IV, Par. I (Code Ann. § 2-401); Article VI, Sec. IX, Par. I (Code Ann. § 2-4401); Article XI, Sec. I, Par. VI (Code Ann. § 2-7806); and Article VI, Sec. XVII, Par. I (Code Ann. § 2-5201).

The opinion cites approvingly, "This court has uniformly construed these provisions of the Constitution to confer upon the General Assembly the power to create boards of commissioners with such powers as the Assembly may grant, without regard to uniformity in the powers conferred; and that the constitutional prohibition which declares that 'no special law shall be enacted in any case for which provision has been made by an existing general law,' is not violated by the creation of such

tribunals as the General Assembly may designate." Additionally, that same Constitution, Art. V, Sec. 15(1) provided: "The General Assembly shall have power to provide for the creation of county commissioners in such counties as may require them and to define their duties."

Though the powers of the inferior courts were abolished, their duties were left delegable by the General Assembly.

Article V. Sec. V(2) of the same Constitution provided: "The courts of ordinary shall have powers in relation to roads, bridges, ferries, public buildings, paupers, *county officers,* county funds, and taxes, and other matters *as shall be conferred on them by law."*

boards." Citing, *County of Pulaski v. Thompson & Co.*, 83 Ga. 270 (9 SE 1065) (1889); *Smith v. Duggan,* 153 Ga. 463 (112 SE 458) (1922); *Rhodes v. Jernigan,* 155 Ga. 523 (117 SE 432) (1923); *Bradford v. Hammond,* 179 Ga. 40 (175 SE 18) (1934); *Moore v. Whaley,* 189 Ga. 647 (7 SE2d 394) (1940); *Bowen v. Lewis,* 201 Ga. 487 (40 SE2d 80) (1946).

The constitutional provisions of 1877, 1945 and 1976 in these areas are all similarly worded. The trial court was correct in determining the special Act authorizing the board of commissioners to fill vacancies in county offices prevailed and such Act does not offend Art. I, Sec. II, Par. VII (Code Ann. § 2-207) of the 1976 Constitution.

*Judgment affirmed. All the Justices concur, except Hall and Hill, JJ., who concur in the judgment only.*

ARGUED JANUARY 10, 1978 — DECIDED MARCH 7, 1978 — REHEARING DENIED MARCH 28, 1978.

*G. Hughel Harrison, J. Carlisle Overstreet, William J. Williams,* for appellant.

*Robert C. Daniel, Jr.,* for appellees.